**IN THE TWENTY-FIRST JUDICAL CIRCUIT**
**SAINT LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| MELISSA WHITE, on behalf of herself and others similarly situated individuals, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| STEAK N SHAKE INC. | ) Jury Trial Demanded ) ) |
| Defendant. | ) ) |
| Served to its registered agent: CSC-Lawyers Incorporating Service Co. 221 Bolivar Street Jefferson City, Missouri 65101 | ) ) ) ) ) |

Cause No.:

**COMPLAINT**
**Collective Action under Fair Labor Standards Act**
**Class Action Claim under Missouri Wage Laws**

**COME NOW,** the Plaintiff Melissa White ("Ms. White"), on behalf of herself and all other similarly situated individuals, and bring this action against Steak N Shake Inc. ("Defendant") for damages and other relief as follows:

1. Ms. White alleges on behalf of herself and other current and former servers, and those similarly situated holding comparable positions with different titles, employed by Defendant in the United States at their corporate owned restaurants, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are entitled to liquidated damages, costs, attorneys' fees, and unpaid wages when they performed tasks unrelated to their tipped occupation and/or spent a substantial amount of their time performing non-tipped job tasks that are related to their tipped occupation.

2. Ms. White further complains, pursuant to Rule 23 on behalf of herself and other current

1

and former servers, and those similarly situated holding comparable positions with different titles, employed by Defendant at their corporate owned restaurants within the State of Missouri, that pursuant to Missouri's Minimum Wage Laws ("MMWL"), Mo. Rev. Stat. § 290.500, *et seq.*, they are entitled to liquidated damages, costs, attorneys' fees, and unpaid wages when they performed tasks unrelated to their tipped occupation and/or spent a substantial amount of their time performing non-tipped job tasks that are related to their tipped occupation.

## PARTIES AND JURISDICTION

3. Ms. White is a citizen residing in the St. Louis County, State of Missouri.

4. Steak N Shake Inc. is an Indian corporation and is authorized to conduct business in the State of Missouri.

5. Steak N Shake operates and/or has operated its corporate owned restaurants in St. Louis County.

6. At the relevant times period, Ms. White worked as a server at Steak N Shake restaurant located in St. Louis County.

7. While working at the restaurant, Ms. White and other servers were wrongfully denied minimum wages when they worked in non-tipped occupations and/or spent a substantial amount of their time performing non-tipped job tasks that are related to their tipped occupation.

8. Venue is proper in this Court because the matters giving rise to the claims occurred in the St. Louis County, State of Missouri.

9. Pursuant to Mo. Rev. Stat. § 508.010(4), this Court has jurisdiction to hear claims alleging a tort against a corporation in the county where plaintiff has alleged he or she was first injured by the acts or conduct alleged.

10. In addition, pursuant to Mo. Rev. Stat. § 290.527, this Court has subject matter

jurisdiction, which authorizes court actions by private parties to recover damages for violation of MMWL and for other actions to recover monies wrongfully withheld or diverted from the rightful owner or recipients of such monies.

11. This Court has general jurisdiction to enforce a right of civil recovery arising under an Act of Congress, except where Congress has expressly limited jurisdiction to the federal courts. *Brockway v. Long*, 55 F. Supp. 79, 80 (Mo. W.D. 1944). Under the FLSA, Congress expressly provided that such an action may be maintained in any court of competent jurisdiction. *Id.*

12. As a result, this Court has jurisdiction over the FLSA and state claims.

## FACTUAL ALLEGATIONS

13. Not including restaurant establishment franchised by Defendant to franchisees, Defendant operates or operated over 400 corporate owned retail restaurants locations throughout the country.

14. Defendant's retail restaurants are divided into five "Group Markets": (a) Chicago/Detroit, (b) Cleveland/Dallas; (c) Indianapolis, (d) Orlando/Atlanta, and (e) St. Louis.

15. In the St. Louis Group Market, there were 51 corporate owned restaurants with 39 of them in Missouri.

16. Defendant was aware that its restaurants in the St. Louis Group Market were chronically understaffed.

17. Defendant routinely prepared reports reflecting the expected number of employees needed at each restaurant based on past sales.

18. These reports reflect the number of hourly employees needed compared to the actual number working at the restaurant.

19. One report was prepared in August 2016 for the St. Louis Group Market, and reflects a

shortage of 111 production workers and 97 service workers at all restaurants. This August 2016 report reflects an average shortage of 4 hourly workers at *each* restaurant in the St. Louis Group Market.

20. On April 10, 2017, in a separate litigation, Defendant produced staffing reports from Steak N Shake's Director of Operating Controls Michael Conner that reflect shortages of hourly employees affecting Missouri restaurants.

21. Upon information and belief, Defendant designates 12 periods in a year that roughly follow the 12 months in a year.

22. A period 6 report from 2013 reflects that the St. Louis Group Market had a shortage of 53 production workers and 105 servers at its restaurants.

23. A period 2 report from 2015 reflects that the St. Louis Group Market had a shortage of 166 production workers and 61 servers at its restaurants.

24. A period 3 report from 2015 reflects that the St. Louis Group Market had a shortage of 240 production workers and 21 servers at its restaurants.

25. A period 3 report from 2016 reflects that the St. Louis Group Market had a shortage of 73 production workers and 30 servers at its restaurants.

26. A period 4 report from 2016 reflects that the St. Louis Group Market had a shortage of 85 production workers and 39 servers at its restaurants.

27. A period 7 report from 2016 reflects that the St. Louis Group Market had a shortage of 89 production workers and 92 servers at its restaurants.

28. A period 3 report from 2017 reflects that the St. Louis Market had a shortage of 186 production workers and 134 servers at its restaurants.

29. A period 4 report from 2017 reflects that the St. Louis Group Market had a shortage of

128 production workers and 68 servers at its restaurants.

30. Without any identifying dates, Defendant produced one report showing average shortages of hourly employees per restaurant. In the St. Louis Group Market (which the report shows having 46 restaurants), there was an average shortage of 4 production workers and one server per restaurant.

31. In addition, numerous managers in the St. Louis Group Market provided testimony in the separate litigation, *Drake and Smith v. Steak N Shake Operations, Inc.*, No. 4:14-cv-1535, 2017 WL 109066884 (E.D. Mo. May 30, 2017), that Defendant's restaurants were routinely understaffed.

32. Manager Sandra Drake testified, "[W]e were highly under-staffed." She further testified, "We were always under-staffed. It was a regular thing. There was never enough people on them shift I worked."

33. Manager Shannon Hampton testified, "You never had enough people, or if you did have people, they weren't the right people."

34. Manager Stephanie Hughes admitted that each of her stores was understaffed.

35. Manager Norman Kelley testified, "Most of the stores I worked at, in fact, all the stores I worked at, were never fully staffed."

36. Manager Tim Lawrence stated in a questionnaire, "We were always under staffed in these positions [the hourly positions] so I did the work."

37. Manager Eric O'Neal testified, "You know, I don't know if all the stores had a staffing issue but I know a majority of them did, and I was one of them, so we didn't have very many crew."

38. Manager Jennifer Skinner testified, "There was never any staff available, and staff that

5

was available, the [General Managers] would have them on their shift."

39. Manager Randy Smith testified, "We would be understaffed."

40. Manager Alicia Trautwein testified, "We were always understaffed at every location."

41. Manager Kelly Ann Williams admitted that there were less associates working than there was needed to be at the restaurant.

42. Upon information and belief, Defendant refused to hire and/or failed to retain adequate employees in respective positions at its restaurants.

43. Because the restaurants were routinely understaffed, some managers would make servers receiving tips work production jobs and/or work non-tipped jobs in excess of twenty percent (20%).

44. The production jobs are unrelated to tipped occupations at Defendant's restaurants.

45. Examples of production jobs, include, but not limited to: preparing food, cooking on the grill, working the drive-thru and front counter, and/or dressing the food with condiments on the line.

46. Examples of non-tipped job related to tipped occupation that exceed twenty percent (20%), include, but not limited to: preparatory and workplace maintenance tasks such as brewing coffee, training servers, setting silverware, cleaning drink dispensers, wiping down tables, setting tables, busing tables, stocking supplies, cleaning booths, sweeping, mopping, and restocking all stations.

47. Manager Rashad Lambert admitted that he moved servers to production jobs "just about every shift" he worked because they were very understaffed.

48. Manager George Nicholson admitted that he requested Ms. White to cook on the grill "if needed" because the restaurant was understaffed.

49. Ms. White and other servers were also routinely ordered to wash dishes at the restaurant.

50. Upon information and belief, other managers ordered similarly situated servers to work non-tipped occupations and/or to spend more than twenty percent (20%) performing non-tipped job tasks that are related to their tipped occupation because the restaurants were understaffed.

51. When Ms. White and other similarly situated servers were ordered to work non-tipped occupations and/or to spend more than twenty percent (20%) performing non-tipped job tasks, they did not receive minimum wages from Defendant.

52. Upon information and belief, Defendant was aware its managers were routinely ordering servers to non-tipped occupations and/or to spend more than twenty percent (20%) performing non-tipped job tasks because of the understaffed issues at the restaurants.

53. These managers acted as agents and in their course of employment for Defendant when they ordered servers to non-tipped occupations and/or to spend more than twenty percent (20%) performing non-tipped job tasks at the restaurants.

54. Yet, Defendant failed to pay the servers the minimum wages when they worked non-tipped occupations and/or spent more than twenty percent (20%) performing non-tipped job tasks.

55. Upon information and belief, production workers did not receive tips like Ms. White and other similarly situated individuals. Instead, the production workers received a higher hourly wage of $7.25.

56. Upon information and belief, Ms. White and other similarly situated individuals received an lower hourly wage of $4.25 while they worked in the tipped occupations.

57. Upon information and belief, Ms. White and other similarly situated individuals

7

Electronically Filed - St Louis County - January 04, 2020 - 08:36 PM

continued to receive the lower hourly wage of $4.25 when they worked non-tipped occupations and/or spent more than twenty (20%) performing non-tipped job tasks.

58. As a result, Defendant wrongfully credited a portion of Ms. White and other similarly situated individuals' tips against its minimum wage obligation, which is commonly known as receiving "tip credit."

59. Rather than pay its tipped employees the applicable minimum wage, Defendant imposed the tip credit upon Ms. White and other similarly situated individuals at below the applicable minimum wage.

60. As a result of Defendant's imposition of the tip credit, Ms. White and other similarly situated individuals were forced to perform minimum wage work at an hourly rate that was less than minimum wage.

61. Ms. White and other similarly situated individuals did not earn enough tips while working in non-tipped occupations that would release Defendant from its obligation to pay them the applicable minimum wage.

62. Defendant engaged in the regular practice of willfully failing to pay Ms. White and other similarly situated individuals the applicable minimum wage.

63. Upon information and belief, Defendant did not keep accurate records of hours worked by Ms. White and other similarly situated individuals as required by law.

64. Ms. White worked as a server for Defendant from April 2009 to February 2014.

65. In July 2016, Ms. White was rehired as a Server Trainer at the restaurant located in Florissant, Missouri.

66. Ms. White specifically worked as a Server Trainer from July 30, 2016 to January 5, 2018 at the Florissant restaurant.

67. As a Server Trainer, Ms. White was responsible for training new servers at the Florissant restaurant.

68. As a Server Trainer, Ms. White also worked as a server, interacting directly with customers to take their orders and deliver food and beverages to customers.

69. Ms. White and other similarly situated individuals' interaction with customers would provide them with the opportunity to earn tips from customers.

70. However, Ms. White and other similarly situated individuals were unable to earn tips when they worked non-tipped occupations and/or spent more than twenty percent (20%) performing non-tipped job tasks.

71. Upon information and belief, Defendant also allowed non-tipped individuals to clock in as servers where they would receive the lower hourly wage and not the higher minimum wage.

72. For example, Ms. Theresa Mann was hired as an operational supervisor at the Florissant restaurant.

73. Upon information and belief, Ms. Theresa Mann earned a higher wage than $4.25 when she worked as an operational supervisor.

74. Upon information and belief, Ms. Theresa Mann was routinely ordered by management to clock in as a server and to work as a server.

75. Upon information and belief, Ms. Theresa Mann and other similarly situated individuals that clocked in as servers did not receive the minimum wage when they worked non-tipped occupations and/or spent more than twenty percent (20%) performing non-tipped job tasks.

76. Ms. White and other similarly situated individuals that clocked in as servers did not receive the minimum wage when they worked non-tipped occupations and/or spent more than twenty percent (20%) performing non-tipped job tasks.

77. Upon information and belief, the wrongful behavior of Defendant of denying the applicable minimum wage continued throughout 2018 and/or 2019, which satisfies the statute of limitations requirement of bringing actions for willful denial of minimum wages within the three years.

## COLLECTIVE CLASS ACTION ALLEGATIONS

78. Ms. White, individually and on behalf of other similarly situated individuals, seeks relief on a collective basis challenging Defendant's practice of failing to pay its employees the applicable minimum wage. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be ascertained from Defendant's records, and potential class members may be notified of the pendency of this action.

79. Ms. White brings this action, encompassing persons similarly situated to her and seeking relief, and defined as:

**The FLSA Tip-Credit Collective Class**

All current and former tipped employees at Defendant's corporate owned restaurants who were servers and were paid at a sub-minimum wage rate any time during the last three years.

80. Ms. White reserves the right to add, amend, modify, or further define the Class and/or move for certification of a class or classes defined differently than set forth above depending on the facts or law as discovered in this action.

81. Ms. White asserts claims against Defendant individually and on behalf of all Class members for violations of the law as set forth below.

82. The members of the Class are ascertainable from objective criteria.

83. The tipped employees can be identified by Defendant's records of tip receipts showing

employees who customarily and regularly received more than thirty dollars a month in tips. *See* 29 U.S.C. § 203(t).

84. If necessary to preserve the case as a collective or class action, the Court itself can redefine the Class, create additional subclasses, or both.

85. The requirements of Rule 23 are satisfied for the proposed Class because the members of the proposed Class are so numerous and geographically dispersed that joinder of all its members is impracticable.

86. Upon information and belief, there are more than fifty members.

87. Therefore, the "numerosity" requirement of Rule 23 is met.

88. The "commonality" requirement of Rule 23 is satisfied because there are questions of law or fact common to all class members that predominate over any questions affecting only individual class members. Among those common question of law or fact are, but are not limited to, the following:

    a. Whether members provided labor to Defendant for which members were unpaid or underpaid;

    b. Whether Defendant failed to keep true and accurate time and pay records for all hours worked by members, and other records required by law;

    c. Whether Defendant received a benefit from not paying or underpaying members for time that they were working; and

    d. Whether Defendant's practice of receiving tip credit when members work in non-tipped occupations and/or work in excess of twenty percent (20%) in non-tipped jobs, violated the law.

89. Ms. White's claims are typical of the claims of the proposed class that she seeks to represent, as described above, because they arise from the same course of conduct and procedures of Defendant and are based on the same legal theories.  Further, Ms. White has sustained damages arising from Defendant's conduct, as alleged herein, and Ms. White seeks the

11

same forms of relief for herself and the proposed class. Therefore, the "typicality" requirement of Rule 23 is satisfied.

90. Because her claims are typical of the proposed class that Ms. White seeks to represent, she has every incentive to pursue those claims vigorously. Ms. White has no conflicts with, or interests antagonistic to, the proposed class. Ms. White, a victim of Defendant's unlawful pay practices and unjust conduct, is committed to the vigorous prosecution of this action, which is reflected in their retention of competent counsel experienced in complex and challenging litigation. The interests of class members will be fairly and adequately protected by Ms. White and her counsel. Accordingly, Ms. White satisfies the "adequacy" requirement of Rule 23.

91. Additionally, a collective class treatment will permit large numbers of similarly-situated tipped workers to prosecute their respective claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

92. Further, by prosecuting this case a collective class action, members, who may be current employees of Defendant, may receive just compensation for the work performed for Defendant without fear of retaliation for seeking just compensation individually.

93. Ms. White and the proposed class are victims of Defendant's systematic and widespread illegal practices in violation of the FLSA, and that have caused significant damages to Ms. White and the proposed class.

94. As the direct and proximate result of Defendant's unlawful conduct, Ms. White and the proposed class have suffered, and will continue to suffer, a loss of income and other damages. Ms. White and the proposed class are entitled to liquidated damages, attorney's fees, and costs incurred in connection with this claim.

Electronically Filed - St Louis County - January 04, 2020 - 08:36 PM

## COUNT I: FAIR LABOR STANDARDS ACT
## NON-TIPPED LABOR UNRELATED TO TIPPED WORK

95. Ms. White re-alleges and incorporates by reference all allegations in all preceding paragraphs.

96. Defendant intentionally failed and/or refused to comply with the FLSA, 29 U.S.C. § 201, *et seq.*, 29 C.F.R. § 531.56(e), and the Department of Labor Field Operations Handbook § 30d00(f), by requiring Ms. White and other similarly situated individuals in a given workweek, and during the workweek they were employed by Defendant, to perform non-tipped labor unrelated to their tipped occupation over the course of their workweek, while paying Ms. White and other similarly situated individuals at the tip credit rate.

97. Defendant intentionally failed and/or refused to pay Ms. White and other similarly situated individuals the full applicable minimum wage according to the provisions of the FLSA for time they spent performing non-tipped labor unrelated to their tipped occupation over the course of a given workweek, for during the workweek that Ms. White and other similarly situated individuals were employed by Defendant, in violation of 29 U.S.C. § 206(a).

98. As such, full applicable minimum wage for such time Ms. White and other similarly situated individuals performed non-tipped labor unrelated to their tipped occupation over the course of their regular workweek is owed to them for each and every workweek they were employed by Defendant.

99. Defendant knew that – or acted with reckless disregard as to whether – its failure to pay to Ms. White and other similarly situated individuals the full applicable minimum wage, without applying the tip credit, for time spent performing labor in such a non-tipped occupation, would violate federal and state law, and Defendant was aware of the FLSA minimum wage requirement

13

during Ms. White and other similarly situated individuals'' employment. As such, Defendant conduct constitutes a willful violation of the FLSA.

100. At all relevant times, Defendant was and continued to be "employer" as defined by

FLSA, 29 U.S.C. § 201, *et seq.*

101. The provisions set forth in the FLSA, 29 U.S.C. § 201, *et seq.*, apply to Defendant.

102. At all relevant times, Ms. White and other similarly situated were "employees" as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

103. Defendant individually and/or through an enterprise or agent, directed and exercised control over Ms. White and other similarly situated individuals' work and wages at all relevant times.

104. Ms. White and other similarly situated individuals, in their work for Defendant, were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

**COUNT II: FAIR LABOR STANDARDS ACT**
**NON-TIPPED LABOR RELATED TO TIPPED WORK IN EXCESS OF 20%**

105. Ms. White re-alleges and incorporates by reference all allegations in all preceding paragraphs.

106. Defendant intentionally failed and/or refused to comply with the FLSA, 29 U.S.C. § 201, *et seq.*, 29 C.F.R. § 531.56(e), and the Department of Labor Field Operations Handbook § 30d00(f) by requiring Ms. White and other similarly situated individuals in a given workweek, and during the workweek they were employed by Defendant, to perform non-tipped labor to their

Electronically Filed - St Louis County - January 04, 2020 - 08:36 PM

tipped occupation in excess of twenty percent (20%) of their workweek, while paying Ms. White and other similarly situated individuals at the tip credit rate.

107. Defendant intentionally failed and/or refused to pay Ms. White and other similarly situated individuals the full applicable minimum wage according to the provisions of the FLSA for time they spent performing non-tipped labor related to their tipped occupation in excess of twenty percent (20%) of a given workweek, for during the workweek that Ms. White and other similarly situated individuals were employed by Defendant, in violation of 29 U.S.C. § 206(a).

108. As such, full applicable minimum wage for such time Ms. White and other similarly situated individuals performed non-tipped labor related to their tipped occupation in excess of twenty percent (20%) of their regular workweek they were employed by Defendant.

109. Defendant knew that – or acted with reckless disregard as to whether – its failure to pay to Ms. White and other similarly situated individuals the full applicable minimum wage, without applying the tip credit, for time spent performing labor in such a non-tipped occupation, would violate federal and state law, and Defendant was aware of the FLSA minimum wage requirement during Ms. White and other similarly situated individuals'' employment. As such, Defendant conduct constitutes a willful violation of the FLSA.

**COUNT III: RULE 23 CLASS UNDER MISSOURI WAGE LAWS**

110. Ms. White re-alleges and incorporates by reference all allegations in all preceding paragraphs.

111. Ms. White and other similarly situated individuals bring their MMWL claim, Mo. Rev. Stat. § 290.500, *et seq.*, as a class action pursuant to Federal Rule of Civil Procedure 23.

112. As stated above, Ms. White and other similarly situated individuals' claims satisfy

15

the numerosity, commonality, typicality, and adequacy and superiority requirements of a class action under Federal Rule of Civil Procedure 23.

113. At all relevant times, Defendant was considered an "employer" as defined by Mo. Rev. Stat. § 290.500 *et seq*.

114. At all relevant times, Defendant was considered an "employer" as defined by Mo. Rev. Stat. § 290.500, *et seq*.

115. The MMWL regulates, among other things, the payment of minimum wage by employers who employ any persons within the State, subject to limited exemptions not applicable herein.

116. Ms. White and other similarly situated individuals are not exempt employees under any State's minimum wage laws.

117. As a result, Ms. White and other similarly situated individuals were entitled to the minimum wage for regularly assigned non-tipped duties and/or work in excess of twenty percent (20%) of their time performing non-tipped duties related to tipped occupation.

118. Defendant willfully and repeatedly violated the MMWL when it refused to pay Ms. White and other similarly situated individuals the full minimum wage.

119. Under the MMWL, the total compensation for employee shall total at least the minimum wage, the difference being made up by the employer. *See* Mo. Rev. Stat. § 290.512.

120. Ms. White and other similarly situated individuals did not receive the minimum wage by Defendant when they were assigned to non-tipped duties and/or worked in excess of twenty percent (20%) of their time performing non-tipped duties related to tipped occupation.

121. Defendant knew or should have known that its repeated practice of failing to pay

16

the minimum wage was in violation of the MMWL.  Additionally, Defendant's knowledge and actions justify an award of liquidated damages and/or penalties as permitted under the MMWL.

122.	Ms. White and other similarly situated individuals have been damaged in the amount of the difference between the hourly wages they were actually paid and the hourly wages they should have been paid under the MMWL.

### COUNT IV: RULE 23 CLASS FOR UNJUST ENRICHMENT

123.	Ms. White re-alleges and incorporates by reference all allegations in all preceding paragraphs.

124.	Ms. White and other similarly situated individuals, by virtue of providing labor without being compensated with minimum wage, have conferred a benefit to Defendant.

125.	Defendant retained the benefit and enjoyed the benefit to the detriment to Ms. White and other similarly situated individuals.

126.	Defendant accepted and retained the benefit in circumstances that render such retention inequitable.

127.	Defendant's retention of the benefit without paying the minimum wage would be unjust.

128.	Defendant has thereby been unjustly enriched and Ms. White and other similarly situated individuals have been damaged.

129.	Ms. White and other similarly situated individuals are entitled to damages equal to all unpaid wages due within five (5) years preceding the filing of this action plus periods of equitable tolling along with such costs, fees, attorney's fees, interest, and other damages and relief as may be permitted in law and equity.

### COUNT V: RULE 23 CLASS FOR QUANTUM MERUIT

130. Ms. White re-alleges and incorporates by reference all allegations in all preceding paragraphs.

131. By employing Ms. White and other similarly situated individuals to perform certain duties for certain time periods, Defendant impliedly promised that they would pay reasonable and just compensation consistent with existing labor laws for valuable work furnished by Ms. White and other similarly situated individuals.

132. Over the full course of their employment at Defendant's corporate owned restaurants, Ms. White and other similarly situated individuals provided this work and labor.

133. The services provided by them had a certain and reasonable value; i.e. their wage rate.

134. Despite demands, Defendant has failed and refused to pay the reasonable and full value of those services.

135. The payments requested for the benefits produced by Ms. White and other similarly situated individuals are the full rate of applicable minimum wage owed to them.

136. Ms. White and other similarly situated individuals are entitled to damages equal to the reasonable value of the services furnished by them for the five (5) years preceding the filing of this action plus periods of equitable tolling along with such costs, fees attorneys' fees, interest and other damages and relief as may be permitted in law and equity.

137. Lastly, Ms. White and other similarly situated individuals' state claims are not preempted by the FLSA claim because the FLSA does not expressly preempt all state law causes of action. *See* 29 U.S.C. § 218 (a).

## PRAYER FOR RELIEF RELATING TO ALL COUNTS

**WHEREFORE,** Ms. Melissa White, individually and on behalf of all others similarly situated, pray for relief as follows:

A. An order from the Court certifying the FLSA Tip-Credit Collective Class identified herein as an FLSA collective action;

B. An order from the Court certifying the Rule 23 class actions identified herein as the MMWL, Unjust Enrichment and Quantum Meruit;

C. An order from the Court awarding Ms. White and class members their unpaid wages in an amount to be proven at trial;

D. An order from the Court awarding Ms. White and class members' compensatory damages in an amount to be proven at trial;

E. An order from the Court awarding Ms. White and class members liquidated damages in an amount set by applicable law and to be proven at trial;

F. An order from the Court for complete and accurate accounting of all the compensation to which Ms. White and class members are entitled;

G. An order from the Court directing Defendant to disgorge back to Ms. White and class members all amounts by which Defendant has been enriched by unlawful and inequitable conduct, in an amount to be proven at trial;

H. An order from the Court awarding Ms. White and class members' prejudgment and post-judgment interest, as well as reasonable attorneys' and expert witness fees and other costs as may be available under the law;

I. Leave to add additional plaintiffs by motion, the filing of consent forms or any other method approved by the Court;

J. Leave to amend to add additional state law claims; and

K. An order from the Court awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Ms. White requests a jury trial on all issues so triable.

        Respectfully Submitted,

        THE LAW OFFICE OF SHEILA R. STUART, LLC



        Sheila R. Stuart, #65217
        sheilarstuart@yahoo.com
        Bemiston Tower
        231 South Bemiston Avenue Suite 800
        Clayton, MO 63105
        Phone: (314) 854-1339 (office)
        Phone: (314) 680-0920 (cell)


        HENDERSON LAW FIRM

        /s/ Samuel Henderson
        Samuel Henderson, Mo. Bar 56330
        attysamuelhenderson@gmail.com
        Hendersa85@hotmail.com
        1027 South Vandeventer Ave., 6th Fl
        Saint Louis, Missouri 63110
        Phone: (314) 399-8266
        Fax: (314) 399-8265

        Counsel for Plaintiff Melissa White